# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EVANSTON INSURANCE COMPANY. | : |
| *Plaintiff,* | : : |
| *v.* | : : : |
| EXPRESS CONTAINER SERVICES OF KEASBEY, LLC; EXPRESS CONTAINER SERVICES, LLC; THE TRAVELERS INDEMNITY COMPANY; NATIONAL INTERSTATE INSURANCE COMPANY; ASPEN SPECIALTY INSURANCE COMPANY; JOHN STANTON; CARMELLA STANTON; and TOM HASSEL | : : : : : : : : : : : |
| *Defendants.* | : : |

Civil Action No.: 2:23-cv-22575-EP-LDW

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND FOR RECOUPMENT AND INDEMNIFICATION FROM THE INSURER DEFENDANTS OF PAYMENTS MADE BY EVANSTON FOR THE SETTLEMENT OF THE UNDERLYING CASE**

**JURY TRIAL DEMANDED**

Plaintiff, Evanston Insurance Company, ("Evanston"), by and through its undersigned counsel, Weber Gallagher Simpson Stapleton Fires & Newby LLP, hereby avers in support of its Amended Complaint for Declaratory Judgment against the Defendants as follows:

## INTRODUCTION

1.      Evanston brings this insurance coverage action to obtain a declaration that it has no obligation to defend or indemnify Defendants, Express Container Services of Keasbey, LLC ("Express Container Keasbey") and Express Container Services ("Express Container") (collectively, "Express Defendants"), in connection with claims made against the Express Defendants by Mr. John Stanton and Mrs. Carmella Stanton ("Underlying Plaintiffs") in a lawsuit seeking damages for alleged negligence, carelessness and premises liability causing John Stanton to sustain injuries at a work site located at 155 Smith Street, Keasbey, Middlesex County, New Jersey ("Premises").  The underlying lawsuit is captioned, *John Stanton and Camella Stanton, per quod, Plaintiff(s) vs Express Container Services of Keasbey, LLC; Express Container Services,*

*LLC; Clifford Topel; Ronald B. Dana; The Dana Companies; Tom Hassel Transport, Inc.; Thomas Hassel, II; John Does 1-100; and ABC Companies, Defendant(s)*, Docket No. MID-L-004028-20, and is pending in the New Jersey Superior Court, Middlesex County ("Underling Action"). <u>See</u> Complaint in Underlying Action (Exhibit A hereto).

2.      In addition, Evanston seeks a determination that it is entitled to reimbursement in the form of subrogation, contribution and/or indemnification from the insurer defendants for the attorney fees and settlement amounts paid by Evanston on behalf of their mutual insureds, Express Defendants in connection with the Underlying Action.

3.      The Underlying Action was scheduled for trial on March 4, 2024.  At that time, the case was settled by Evanston and National Insurance Company (NIIC) on behalf of their mutual insureds, the Express Defendants in the amount of $2,600,000 (the "Settlement Payments"). The Settlement Payments were not made by Evanston or NIIC as volunteers.

4.      The parties agreed that the Declaratory Judgment Action will determine the coverage issues alleged by Evanston and by the insurer defendants and respective amounts required to be paid by the insurer defendants in connection with the Settlement Payments.

<u>**PARTIES**</u>

5.      Evanston is an Illinois corporation with its principal place of business in Illinois and is authorized to do business in the State of New Jersey.

6.      Upon information and belief, Express Container Keasbey is a New Jersey limited liability company with its principal place of business in New Jersey.

7.      Upon information and belief, Express Container is a Pennsylvania limited liability company with its principal place of business in Pennsylvania.

8.     Upon information and belief, The Travelers Indemnity Company ("Travelers") is a Connecticut corporation with its principal place of business in Connecticut and is authorized to do business in the State of New Jersey.

9.     Upon information and belief, NIIC is an Ohio corporation with its principal place of business in Ohio and is authorized to do business in the State of New Jersey.

10.     Aspen Specialty Insurance Company ("Aspen") is a North Dakota Corporation with its principal place of business in North Dakota and is authorized to do business in the State of New Jersey.

11.     John Stanton is an individual who is domiciled in, and a citizen of New Jersey.

12.     Carmella Stanton is an individual who is domiciled in, and a citizen of New Jersey.

13.     As plaintiffs in the Underlying Actions, Mr. and Mrs. Stanton are potentially interested parties that may be affected by the declarations sought in the within action. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

14.     Upon information and belief, Tom Hassel Transport, Inc. ("Tom Hassel") is a New Jersey corporation with its principal place of business in Point Pleasant Beach, New Jersey.

15.     Tom Hassel is the named insured on the policies issued by NIIC and Aspen, and a named defendant in the Lawsuit. As such, he is an interested party pursuant to the Federal Declaratory Judgment Act, Fed. R. Civ. P. 57.

16.     Ronald B. Dana is the sole member of Express Containers, LLC and Express Container Services, LLC (i.e., Express Defendants). Mr. Dana is a citizen, domiciled and resides in New Jersey and San Juan Puerto Rico. Mr. Dana is not a citizen, resident or domiciled in Illinois. Therefore, there is complete diversity between Plaintiff Evanston and the Express Container Defendants.

## JURISDICTION AND VENUE

17.    There exists an actual and justiciable controversy between and among the parties concerning their respective rights and obligations under certain policies of insurance with respect to the Underlying Action pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57.

18.    The Underlying Action alleged that Mr. Stanton suffered permanent "traumatic, severe and painful bodily injuries, which have caused and will in the future continue to cause him severe pain and suffering." See Exhibit A at ¶¶7-8.

19.    The Underlying Action alleged that Mr. Stanton's injuries "have caused and will in the future cause him to incur various and diverse expenditures for medical treatment and care" and "have in the past and will in the future continue to require him to seek and undergo medical attention, surgical procedures, therapies, consultations, and other various treatments." Id.

20.    The Underlying Action further alleged that Mr. Stanton's injuries "have in the past and will in the future continue to cause disability and lost function of bodily and/or mental capacity," and "have in the past and will in the future continue to incapacitate him and render him incapable of pursuing his regular and ordinary occupation, activities, and pursuits." Id.

21.    The Underlying Action further alleged that Mrs. Stanton "has and will lose the services, society and consortium" of Mr. Stanton as a result of his alleged injuries. See Exhibit A at Third Count, ¶3.

22.    Evanston contributed $1.6 million to the Settlement Payments under its Primary Commercial General Liability Policy (the "Evanston Primary CGL Policy") and Commercial Excess Policy (the "Evanston Excess Policy") issued to the Express Defendants in order to shield them from an excess verdict in the Underlying Action.

23.    The Underling Action is now fully resolved. Evanston seeks through this lawsuit reimbursement from the insurer Defendants for payment of monies it paid in connection with the

Underlying Action based on principles of equitable subrogation, contribution and indemnification.

24.    Due to the permanent and debilitating nature of Mr. Stanton's alleged injuries, as well at the amount of settlement, the amount in controversy in this action exceeds the value of $75,000, exclusive of interests and costs.

25.    Accordingly, this Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

26.    Venue is proper under 28 U.S.C. §1391, because the events at issue in the Underlying Action took place in this district and Defendants, Express Container Keasbey operates a business located in this district.

## FACTUAL BACKGROUND

### A.    THE UNDERLYING ACTION

27.    On June 23, 2020, the Underlying Plaintiffs filed the Underlying Action against, *inter alia*, Express Container Keasbey, Express Container, and Tom Hassel in the Superior Court of New Jersey.  See Exhibit A.

28.    Underlying Plaintiffs alleged that on July 24, 2018, Mr. Stanton was injured while "working as a truck driver" at the Premises, where he was a business invitee.  See id. at ¶ 1.

29.    Specifically, the Underlying Plaintiffs alleged that Mr. Stanton "[w]hile working within the scope of his employment at said time, he was performing certain oil rig trucking duties, he was caused to sustain certain severe back, head and other injuries when he fell to the ground causing him sustain severe, debilitating and permanent injuries."  Id. at ¶ 1.

30.    The Underlying Plaintiffs alleged that Mr. Stanton was "performing maintenance and performing certain oil rig trucking functions on [defendants'] premises or premises they were occupiers of or which had involvement in."  Id. at ¶ 5.

31.     The Underlying Plaintiffs alleged that because of defendants' negligence "Plaintiff was caused to fall to the ground off the oil rig, and suffered traumatic, severe and painful bodily injuries." Id. at ¶ 7.

32.     The Underlying Plaintiffs further alleged that the defendants were the "landowner(s), subcontractor(s), supplier(s), tenant(s) and/or business owner of the workplace." Id. at ¶ 2.

33.     Evanston contributed $1.6M to the Settlement Payments under the "Evanston Primary Policy and Evanston Excess Policy issued to the Express Defendants in order to shield them from an excess verdict in the Underlying Action.

34.     The Evanston Primary Policy has an "absolute auto exclusion" that precludes coverage for the injuries of Stanton.

35.     Travelers issued a primary commercial auto policy to the Express Defendants (the "Travelers Primary Auto Policy"). The Traveler's Primary Policy covers only covered autos, which includes non-owned autos, but only while "used in connection with" the Express Defendants' business.

36.     The Express Defendants have a car wash component to their business. Prior to the accident, the outside of the truck driven by Stanton was to have been washed by the Express Defendants.

37.     The Evanston Excess Policy is inapplicable based upon the Auto Exclusion in the Evanston Primary Policy.

38.     Further, in the event it is determined that the non-owned auto was not "used in connection with" the Express Defendants' business, there is no coverage under the Travelers Policy or the Evanston Excess Policy.

39.    In the alternative, if it is determined that the non-owned auto was "used in connection" with the Express Defendants' business, coverage is afforded under the Travelers Policy.

**B.    LEASE AGREEMENT BETWEEN THE EXPRESS DEFENDANTS AND TOM HASSEL**

40.    On September 1, 2013, Express Container Keasbey and/or Express Container (Lessor) entered into a commercial lease agreement with Tom Hassel (Lessee) for the Premises located at 155 Smith Street, Keasbey, Middlesex County, New Jersey ("Lease Agreement"). See Lease Agreement (Exhibit B hereto).

41.    The Lease Agreement was in effect at the time of the events giving rise to the Underlying Action.

42.    The Lease Agreement describes Lessor as "a business incorporated in the state of New Jersey." Id.

43.    Express Container Keasbey is incorporated in New Jersey.

44.    The Lease Agreement provides:

> **10) Indemnification**: Lessor shall not be liable for any damage or injury to lessee, or any other person, or to any property, occurring on the demised property or any part thereof, unless damage or injury is caused by lessor and lessee agrees to hold lessor harmless from any claims for damages unless damages are caused by lessor.
>
> * * *
>
> **12) Insurance**: Lessee at his expense shall maintain public liability insurance including bodily injury and property damage. Lessee should also name Lessor as additional insured.

Id. at ¶¶ 10, 12.

C.      **THE EVANSTON PRIMARY POLICY**

45.      Evanston issued the Evanston Primary CGL Policy of insurance, Policy No. MKLV1ENV100440, to the Express Defendants for the policy period August 2, 2017 to August 2, 2018. See Evanston Primary CGL Policy (Exhibit C hereto).

46.      The Evanston Primary CGL Policy's Declarations identifies ALL PREMISES YOU OWN, RENT OR OCCUPY, which identifies 155 Smith Street, Keasbey, New Jersey 08832. See id. at MDGL 1009 08 11.

47.      The Evanston Primary CGL Policy contains an Aircraft, Auto or Watercraft Exclusion Endorsement ("Auto Exclusion"), which provides in relevant part:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **EXCLUSION – AIRCRAFT, AUTO OR WATERCRAFT**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> Paragraph **g.** Aircraft, Auto Or Watercraft of Section **I** – Coverages, Coverage **A** Bodily Injury And Property Damage Liability, **2.** Exclusions is deleted in its entirety and replaced with the following:
>
> **g.      Aircraft, Auto Or Watercraft**
>
> (1)      "Bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft; or
>
> (2)      "Bodily injury" or "property damage" arising out of the "loading or unloading" of any aircraft, "auto" or watercraft;
>
> whether or not owned, maintained, used, rented, leased, or borrowed by any insured and whether or not hired, contracted, loaned or entrusted to others by any insured.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, contracting, screening, training or monitoring of others by any insured.
>
> All other terms and conditions remain unchanged.

Id., EMEGL 1397 07 10.

48.    The Evanston Primary CGL Policy contains the following relevant definitions:

**SECTION V – DEFINITIONS**

2.  "Auto" means:

a.    A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b.    Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

<u>Id.</u> CG 00 01 04 13.

49.    The Policy also contains the following Other Insurance Condition:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when Paragraph b. below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.    Excess Insurance**

**(1)**    This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

\* \* \*

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

<u>Id.</u> CG 00 01 04 13.

50.    The Evanston Primary CGL Policy contains the following exclusion:

* * *

**V.    APPLICABLE TO THE COMMERCIAL GENERAL LIABILITY, OWNERS AND CONTRACTORS PROTECTIVE LIABILITY, AND PRODUCTS-COMPLETED OPERATIONS COVERAGE FORMS ONLY**

The following are added to the **EXCLUSIONS** sections of the applicable Coverage Forms attached.

This insurance does not apply to:

* * *

**6.    Punitive or Exemplary Damages**

Punitive damages, exemplary damages, multiplied damages, fines or penalties.

Id., MEEI 2700 05 13.

### D.    THE TRAVELERS AUTOMOBILE LIABILITY POLICY

51.    Travelers issued The Travelers Primary Auto Policy, Policy No. BA2G106796-17-CAG, to the Express Defendants for the policy period August 2, 2017 to August 2, 2018. See Travelers Primary Auto Policy (Exhibit D hereto).

52.    The Travelers Primary Auto Policy provides coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" See Travelers Primary Auto Policy, BUSINESS AUTO COVERAGE FORM CA T0 31 02 05.

53.    The Travelers Primary Auto Policy covers, in relevant part, the following "autos" ("Non-Owned Auto Limit"):

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their

households but only while used in your business or your personal affairs.

Id., CA T0 31 02 05.

54.    The facts in the Underlying Action will show that the Express Defendants used their car washing equipment to wash the truck which Mr. Stanton was inspecting.

55.    In the Underlying Action, Mr. Stanton claimed that he noticed oil on the tanker after it was cleaned and therefore, intended to request it be sent back to be recleaned by Express Defendants.

56.    In the Underlying Action, Mr. Stanton alleged that he was injured during that inspection of the truck following the cleaning by Express Defendants.

57.    Therefore, to the extent that it is determined that the Express Defendants used the truck "in connection with" its business, then the Travelers Primary Auto Policy is triggered as it affords coverage to the Express Defendants.

## E.    THE EVANSTON EXCESS POLICY

58.    Evanston also issued the Evanston Excess Policy, Policy No. MKLV1ENV100440, to the Express Defendants for the policy period August 2, 2017 to August 2, 2018 ("Evanston Excess Policy").[1] See Evanston Excess Policy (Exhibit E hereto).

59.    The Declarations Page of the Evanston Excess Policy includes a "Schedule of Underlying Insurance," which identifies, in relevant part, the Primary CGL Policy and the Travelers Primary Auto Policy.

60.    The Evanston Excess Policy incorporates all exclusions contained in the underlying insurance policies, including the Evanston Primary CGL Policy's Auto Exclusion, through the following policy language:

---

[1] Collectively, the Primary CGL Policy and Excess Policy are referred to herein as "Evanston Policies."

**SECTION II. EXCLUSIONS**

The exclusions applicable to the "underlying insurance" also apply
to this policy.

Id., MAUB 0001 01 15.

61.     The Evanston Excess Policy contains a "CONDITIONS" section requiring that the

Named Insured(s) maintain the "underlying insurance" in the Schedule of Underlying Insurance:

**SECTION IV. CONDITIONS**

If any of the following conditions are contrary to conditions
contained in the "underlying insurance" the provisions contained in
this policy apply.

\*\*\*

2.      Maintenance Of Underlying Insurance

   a.      You agree to maintain the "underlying insurance" in
   full force and effect during the term of this policy,
   and to inform us within 30 days of any replacement
   or material change of that "underlying insurance" by
   the same or another company. Failure to maintain the
   "underlying insurance" in full force and effect or to
   meet all conditions and warranties of such
   "underlying insurance" will not invalidate insurance
   provided under this policy, but insurance provided
   under this policy shall apply as if the "underlying
   insurance" were available and collectible.

   b.      Reduction or exhaustion of the aggregate limit of any
   "underlying insurance" by payments for judgments,
   settlements or any costs or expenses subject to that
   limit, will not be a failure to maintain "underlying
   insurance" in full force and effect.

   c.      No statement contained in this condition limits our
   right to cancel or not renew this policy.

   For purposes of this policy, if any "underlying insurance" is
   not available or collectible because of:

   a.      The bankruptcy or insolvency of the underlying
   insurer(s) providing such "underlying insurance"; or

   b.      The inability or failure for any other reason of such
   underlying insurer(s) to comply with any of the
   obligations of its policy; then this policy shall apply
   and amounts payable hereunder shall be determined
   as if such "underlying insurance" were available and
   collectible.

Id.

13

62.     The Evanston Excess Policy contains a "CHANGES – PRIMARY AND NONCONTRIBUTORY" endorsement which changes the Excess Policy's CONDITIONS section:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **CHANGES – PRIMARY AND NONCONTRIBUTORY**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL EXCESS LIABILITY POLICY
>
> Paragraph 3. Other Insurance in Section IV. Conditions is replaced by the following:
>
> 3.     Other Insurance
>
>     a.     Excess
>
>        This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except if the other insurance is written specifically to be excess over this insurance or if the Primary And Noncontributory Excess Insurance provision below applies.

Id., MAUB 1512 09 16.

63.     The Evanston Excess Policy contains a "NON-DROP DOWN PROVISION" which provides:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **NON-DROP DOWN PROVISION**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL EXCESS LIABILITY POLICY
> COMMERCIAL UMBRELLA LIABILITY POLICY
>
> Please refer to each Coverage Form to determine which terms are defined. Words shown in quotations on this endorsement may or may not be defined in all Coverage Forms.
>
> The aggregate limits on "underlying insurance" shall not be reduced as respects coverage excluded hereunder. It shall be the insured's sole responsibility to provide other insurance or self-insurance for any impairment of the underlying aggregate limit.

All other terms and conditions remain unchanged.

<u>Id</u>., MAUB 1255 01 15.

64.    The Evanston Excess Policy contains the following relevant definition:

**SECTION V. DEFINITIONS**

"Underlying insurance" means the policies or self-insurance shown in the Schedule Of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations. Policies purchased or issued replacements of policies or self-insurance listed in the Schedule Of Underlying Insurance or for newly acquired or formed organizations shall not be more restrictive than those listed in the Schedule Of Underlying Insurance. All "underlying insurance" shall be maintained by you in accordance with the Maintenance Of Underlying Insurance condition of this policy.

<u>Id</u>., MAUB 0001 01 15.

65.    The Evanston Excess Policy contains an "EXCLUSION – PUNITIVE DAMAGES" endorsement which modifies coverage as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – PUNITIVE DAMAGES**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY POLICY
COMMERCIAL UMBRELLA LIABILITY POLICY

Please refer to each Coverage Form to determine which terms are defined. Words shown in quotations on this endorsement may or may not be defined in all Coverage Forms.

The following is added to the Exclusions section:

This policy does not apply to:

**Punitive Or Exemplary Damages**

Punitive or exemplary damages. This exclusion applies regardless of any other provision of this policy.

If a "suit" is brought, against any insured, seeking both compensatory damages and punitive or exemplary damages, no

coverage will be provided by this policy for any costs, including defense costs, interest, fines or penalties attributable to punitive or exemplary damages.

All other terms and conditions remain unchanged.

Id., MAUB 1692 01 15.

### F.    THE NIIC PRIMARY AUTOMOBILE LIABILITY POLICY

66.    NIIC issued a commercial auto policy of insurance, Policy No. WHP 8200049 02,

to Tom Hassel for the policy period June 1, 2018 to June 1, 2019 ("NIIC Primary Auto Policy").

See NIIC Primary Auto Policy (Exhibit F hereto).

67.    The NIIC Auto Policy provides the following insuring agreement:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**
**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

* * *

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

Id., CA 00 20 10 13.

68.    The NIIC Primary Auto Policy contains the following:

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**1.    Who Is An Insured**

The following are "insureds":

**a.**    You for any covered "auto".

* * *

    **e.**    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Id., CA 00 20 10 13.

69. The NIIC Primary Auto Policy contains the following Blanket Additional Insured Endorsement:

### BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
AUTO DEALERS COVERAGE FORM
TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

Who Is An Insured under COVERED AUTOS LIABILITY COVERAGE is amended to include as an "insured", any person or organization you are required to add as an additional insured on this policy under a written contract, agreement or permit which must be:

a.    currently in effect or becoming effective during the term of the policy; and

b.    executed prior to the "bodily injury" or "property damage."

The insurance provided to this additional insured is limited as follows:

1.    That person or organization is an additional insured only with respect to liability arising out of your operations performed for that additional insured as specified in the written contract, agreement or permit.

2.    The limits of insurance applicable to the additional insured are those in written contract, agreement, permit or in the Declarations for this policy, whichever are less. These limits of insurance are inclusive of and not in addition to the Limit of Insurance for Liability Coverage shown in the Declarations.

3.    Coverage is not provided for "bodily injury" or "property damage" arising out of the sole negligence of the additional insured.

Any coverage provided hereunder will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be primary.

When this insurance is in excess, we will have no duty to defend the additional insured against any "suit" if any other insurer has a duty to defend the additional insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the additional insurer's [sic] rights against all those other insurers.

All other terms and conditions of this policy remain unchanged.

Id., NI CA 50 57 06 14.

70.    Evanston agreed to defend the Express Defendants under a reservation of rights and tendered the Stanton lawsuit on behalf of Express Defendants to Tom Hassel, NIIC and Travelers. NIIC agreed to defend Express Container Services, but not Express Keasbey.

### G.    THE ASPEN  EXCESS POLICY

71.    Aspen issued an excess liability insurance policy, Policy No. CV005WQ18 for the policy period of June 1, 2018 through June 1, 2019, with limits of $4,000,000 per occurrence and in the general aggregate (the "Aspen Excess Policy"). (Exhibit G).  The Aspen Excess Policy is titled "Follow Form Excess Liability Insurance Policy."

72.    The named insured on the Aspen Excess Policy is Tom Hassel Transport, Inc.

73.    The Aspen Excess Policy defines the term Insured to include, in relevant part:

3. Any person or organization qualifying as an **Insured** under the **Controlling Underlying Insurance,** but only to the extent that:

a.    Coverage is provided by this Policy; and

b.    Coverage is provided by all of the **Underlying Insurance**, or would  have been provided but for the exhaustion of such policy's limits of liability;

Any additional insured qualifying as such under the Controlling Underlying Insurance" qualifies as an insured but only:

a.    To the extent of the insurance provided the additional insured under the **Controlling Underlying Insurance**, and not otherwise excluded by this Policy; and

b. Where coverage is required to be provided to an additional insured under a contract or agreement. However, the Limits of Insurance afforded the additional insured in this Subsection **F**.3.b. under Section **V. DEFINITIONS**, shall be the lesser of the following:

   i. The minimum limits of insurance required in the contract or agreement between the **Named Insured** and the additional insured, less the amounts available from **Underlying Insurance Limits**; or

   ii. The Limits of Insurance stated in Item 3 of the Declarations for this Policy.

74.     The Schedule of Controlling Insurance Identifies National Interstate Insurance Company  as the underlying auto insurer.

75.     The Express Defendants qualify as an insured under the NIIC Primary Auto Policy, and, therefore, the Aspen Excess Policy.

76.     The Express Defendants also qualify as an Additional Insured under the NIIC Primary Auto Policy, and, therefore, the Aspen Excess Policy.

77.     The Aspen Excess Policy provides the following insurance agreement:

**Section I. Insuring Agreements**:

The Company shall pay on behalf of the **Insured** those amounts of **Loss** for which coverage is provided under the definitions, terms, conditions, limitations and exclusions of the **Controlling Underlying Insurance** in effect at the inception of this Policy and which exceeds the total Limits of Liability of the **Underlying Insurance Limit** set forth in Items 4 (A) and 4 (B) of the Schedule of Underlying Insurance of this Policy.  The amount the Company will pay for **Loss** is limited as provided under Section II – Limits of Insurance of this Policy.

If any provision of the underlying Insurance conflicts with any provision of this Policy, then the provision of this Policy shall apply, provided that if any provision in this policy would result in broader coverage than is provided by any of the **Underlying Insurance**, the provision of the **Underlying Insurance** will apply.  The Policy shall not provide broader coverage than that provided by any of the **Underlying Insurance**.

### H.     EVANSTON'S INVESTIGATION AND COVERAGE POSITION

78.     Evanston issued a full reservation of rights letter to the Express Defendants on February 24, 2021.  See Correspondence Addressed to the Express Defendants 02/24/21 (Exhibit H hereto).

79.     Evanston's reservation of rights letter stated there was no coverage for the Underlying Action based on the auto exclusion in the Evanston Primary CGL Policy and Evanston Excess Policy. Evanston agreed to provide a defense, as a courtesy, under the Evanston Primary CGL Policy, subject to a complete reservation of rights. Evanston also reserved the right to disclaim coverage for any damages that are not covered under the Evanston Policies.

80.     On February 24, 2021, Evanston tendered defense and indemnity of the Underlying Action on behalf of the Express Defendants to Tom Hassel pursuant to Tom Hassel's obligations in the Lease Agreement. See Correspondence Addressed to Tom Hassel 02/24/21 (Exhibit I hereto).

81.     On March 16, 2022, NIIC responded to Evanston's tender on Tom Hassel's behalf and agreed to provide a defense to Express Container, but denied Express Container Keasbey's status as an additional insured, claiming that Express Container Keasbey is not a party to the Lease Agreement. See Correspondence 03/16/22 (Exhibit J hereto).

82.     Evanston retendered defense and indemnity of the Underlying Action on behalf of Express Container Keasbey on April 10, 2023, explaining that Express Container Keasbey is, in fact, a party to the Lease Agreement. See Correspondence 6/8/23 (Exhibit K hereto).

83.     NIIC rejected Evanston's retender on behalf of Express Container Keasbey on dated 8/14/23. See Correspondence dated 8/14/23 (Exhibit L hereto).

84.    On January 5, 2022, Evanston tendered defense and indemnity against the Underlying Action to Travelers on the Express Defendants' behalf. See Correspondence dated 01/05/2022 (Exhibit M hereto).

85.    On January 20, 2022, Travelers disclaimed coverage to the Express Defendants for the Underlying Action. See Correspondence 01/20/22 (Exhibit N hereto).

86.    In its October 27, 2023 letter to counsel for the Express Defendants, Aspen acknowledged their status as additional insureds but reserved its rights to deny coverage. See Correspondence dated 10/27/2023 (Exhibit O.)

87.    After unsuccessful requests to have Travelers and Aspen contribute to the settlement of the Underlying Action, Evanston and NIIC paid settlement amounts to resolve the Underlying Action and to shield the Express Defendants from an excess verdict.

88.    The Evanston Primary CGL Policy has an absolute auto exclusion that fully precludes coverage for the injuries of Stanton.

89.    The Aspen Excess Policy sits above the NIIC Primary Auto Policy.

90.    Both the NIIC Primary Auto Policy and Aspen Policy afford auto coverage to their insureds, which includes the Express Defendants.

91.    The Evanston Excess Policy sits above the Evanston Primary CGL Policy, which is inapplicable because of the auto exclusion, as well as the Travelers Primary Auto Policy.

92.    The Travelers Primary Auto Policy provides coverage to the Express Defendants for autos they own and autos they do not own if the auto was used by the Express Defendants "in connection with" their business.

93.    There is a real, substantial, and justiciable issue and controversy between the parties hereto with respect to the availability of liability coverage under the Evanston, NIIC, Aspen and Travelers Policies for the claims asserted in the Underlying Action against the Express Defendants.

94.     A judicial determination and a declaration of the rights and obligations of the parties is necessary and appropriate at this time to resolve this current dispute.

## <u>COUNT ONE</u>

**REQUEST FOR DECLARATORY RELIEF THAT COVERAGE UNDER THE EVANSTON PRIMARY CGL POLICY IS BARRED BY THE AUTO EXCLUSION**

95.     Evanston repeats and re-alleges Paragraphs 1 through 94 as though set forth fully at length.

96.     Underlying Plaintiffs allege that at the time of Mr. Stanton's injury, he "was working as a truck driver" and "working within the scope of his employment . . . performing certain oil rig trucking duties." <u>See</u> Exhibit A at ¶1.

97.     Underlying Plaintiffs allege that at the time of the accident, Mr. Stanton was injured when he "was caused to fall to the ground off the oil rig." <u>Id</u>.at ¶7.

98.     The Evanston Primary CGL Policy's Auto Exclusion precludes coverage for "bodily injuries" arising out of an "auto" "whether or not owned, maintained, used, rented, leased, or borrowed by any insured and whether or not hired, contracted, loaned or entrusted to others by any insured." <u>See</u> Exhibit C, EMEGL 1397 07 10.

99.     The damages claimed in the Underlying Action arise out of an "auto" as defined in the Evanston Primary CGL Policy.

100.    The Evanston Primary CGL Policy expressly excludes coverage for "bodily injury" or "property damage" arising out of any "auto." <u>Id</u>.

101.    As a result, there is no coverage under the Evanston Primary CGL Policy for the claims asserted against the Express Defendants in the Underlying Action.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a.  Evanston had no duty to defend or indemnify Express Container Keasbey for the claims at issue in the Underlying Action under the Evanston Primary CGL Policy;

b.  Evanston had no duty defend or indemnify Express Container for the claims at issue in the Underlying Action under the Evanston Primary CGL Policy; and

c.  All parties are bound by the Court's declaration.

d.  Evanston is entitled to all other costs the Court deems just.

## <u>COUNT TWO</u>

**REQUEST FOR DECLARATORY RELIEF THAT THERE IS NO COVERAGE UNDER THE EVANSTON EXCESS POLICY FOR THE CLAIMS ASSERTED AGAINST THE EXPRESS DEFENDANTS**

102.  Evanston repeats and re-alleges paragraphs 1 through 94 as though set forth fully at length.

103.  The Evanston Excess Policy is excess over the Evanston Primary CGL Policy and the Travelers Primary Auto Policy.

104.  The Evanston Excess Policy follows form of the Evanston Primary CGL Policy, unless inconsistent with the terms of its policy. <u>See</u> Exhibit E, MAUB 0001 01 15.

105.  The Evanston Excess follows form of the Travelers Primary Auto Policy, unless inconsistent with the terms of its policy.

106.  The Evanston Excess Policy incorporates the Auto Exclusion contained in the Evanston Primary CGL Policy for the purposes of coverage in excess of that CGL coverage.

107.  Thus, if there is no coverage under the Evanston Primary CGL Policy, then there is no coverage under the Evanston Excess Policy above it.

108.  The Travelers Primary Auto Policy limits coverage to "only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business…" <u>See</u> Exhibit D, CA T0 31 02 05.

109.    The "auto" central to the Underlying Action is owned by Tom Hassel, and is *not* owned by the Express Defendants.

110.    The Evanston Excess Policy follows form to the Travelers Primary Auto Policy and incorporates the terms of the Travelers Primary Auto Policy, including the Non-Owned Auto Limit. See Exhibit E, MAUB 0001 01 15.

111.    To the extent it is determined that the non-owned auto was not used "in connection with" the Express Defendants business, there is no coverage under the Travelers Primary Auto Policy for the claims asserted against the Express Defendants in the Underlying Action.

112.    If there is no coverage under the Travelers Primary Auto Policy, then there is no coverage under the Evanston Excess Policy for the Underlying Action.

113.    The Evanston Excess Policy also provides that it has no obligation to provide a defense to any covered lawsuit unless the "underlying insurance" has been fully exhausted by payment of judgments or settlement.

114.    As such, even if there was coverage under the Evanston Excess Policy, Evanston would have no defense obligations under its policy as none of the underlying insurance has been fully and properly exhausted.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a.    Evanston had no duty to defend or indemnify Express Container Keasbey for the claims at issue in the Underlying Action under the Evanston Excess Policy;

b.    Evanston had no duty defend or indemnify Express Container for the claims at issue in the Underlying Action under the Evanston Excess Policy; and

c.    All parties are bound by the Court's declaration.

d.    Evanston seeks such other relief as is just and proper.

## COUNT THREE

**EQUITABLE CONTRIBUTION AND INDEMNITY AGAINST NIIC,  ASPEN, AND TRAVELERS**

115.    Evanston repeats and re-alleges paragraphs 1 through 94 as though set forth fully at length.

116.    The NIIC Primary Auto Policy provides that "[a]nyone liable for the conduct of an 'insured'" qualifies as an insured. See Exhibit F, CA 00 20 10 13.

117.    The claims asserted against the Express Defendants are based on their alleged status as owners of the Premises and includes theories of liability based on strict liability including liability for the negligence of Tom Hassel. See Engineering Report – Engineering Evaluation of Fall Accident prepared by Wayne F. Nolte, Ph.D., P.E. in Hazlet, New Jersey (Exhibit P hereto).

118.    As such the Express Defendants qualify as insureds under the NIIC Primary Auto Policy.

119.    Because the Express Defendants qualify as insureds under the NIIC Primary Auto Policy, they also qualify as insureds under the Aspen Excess Policy.

120.    The NIIC Primary Auto Policy provides additional insured coverage for "any person or organization [the insured is] required to add as an additional insured on this policy under a written contract, agreement or permit." See Exhibit F, NI CA 50 57 06 14.

121.    The Lease Agreement requires that Tom Hassel add the Lessor as an additional insured on its policies of liability insurance. See Exhibit B.

122.    Upon information and belief, the Express Defendants are a party to the Lease and, therefore, they also qualify as additional insureds under the NIIC Primary Auto Policy.

123.    NIIC acknowledged Express Container's status as an additional insured under the NIIC Primary Auto Policy. See Exhibit I.

124.    Evanston is entitled to a declaration that both Express Container and Express Container Keasbey qualify as insureds and/or additional insureds under the NIIC Primary Auto Policy pursuant to the Lease Agreement.

125.    Because the Express Defendants qualify as insureds and/or additional insureds under the NIIC Primary Auto Policy, they also qualify as insured under the Aspen Excess Policy.

126.    Evanston paid for the defense fees and costs incurred by the Express Defendants in the Underlying Action under the Evanston Primary CGL Policy, subject to a complete reservation of rights.

127.    Evanston paid $1.6 million towards the Settlement Payments on behalf of the Express Defendants in the Underlying Action under the Evanston Primary CGL Policy and Evanston Excess Policy, subject to a complete reservation of rights.

128.    Evanston owes no coverage under its policies for the Underlying Action.

129.    The Express Defendants were entitled to a defense and indemnification from NIIC for the Underlying Action.

130.    Therefore, Evanston is entitled to contribution and/or indemnity from NIIC in connection with the payments it made for the defense and in settlement of the Underlying Action on behalf of the Express Defendants.

131.    The Express Defendants were entitled to a defense and indemnification from Aspen for the claims asserted against them in the Underlying Action.

132.    Evanston is entitled to contribution and/or indemnity from Aspen in connection with the payments it made for the defense and payment of the settlement on behalf of the Express Defendants to the Underlying Plaintiffs.

133.    The Travelers Primary Auto Policy was issued to the Express Defendants.

134.    To the extent the non-owned auto was "used in connection with" the Express Defendants business, Travelers owed a defense and indemnity to the Express Defendants.

135.    Therefore, Evanston is entitled to contribution and/or indemnity from Travelers in connection with the payments it made for the defense and in settlement of the Underlying Action on behalf of the Express Defendants.

136.    An actual controversy has arisen and now exists between plaintiff and defendants NIIC, Aspen, and Travelers regarding their respective rights and obligations under the policies. NIIC, Aspen and/or Travelers owe and have owed since their time of tender, a duty to defend and indemnify Express Defendants for the claims asserted against them in the Underlying Action under their respective policies that include Express Defendants as an insured.

137.    Plaintiff desires a judicial determination and declaration of its and defendants NIIC, Aspen and/or Travelers respective rights and duties and specifically seeks a ruling that NIIC, Aspen and/or Travelers, individually or collectively, owed their insureds, the Express Defendants a full and complete defense of the Underlying Action and that individually or collectively must reimburse Plaintiff for all defense costs paid by Plaintiff to defend the Express Defendants in the Underlying Action, from the date on which defense was tendered to them.

138.    Plaintiff seeks a judicial determination and declaration of its and defendants NIIC, Aspen and Travelers respective rights and duties and specifically seeks a ruling that NIIC, Aspen and/or Travelers owed and owes Express Defendants full and complete indemnification of the Settlement Payments made by Evanston in the Underlying Action and that NIIC, Aspen and/or Travelers must reimburse Plaintiff indemnity paid by Plaintiff on behalf of the Express Defendants to resolve the Underlying Action.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a. Coverage is owed under the policies of insurance issued by Defendants Aspen, NIIC, and/or Travelers;

b. Evanston is entitled to an award for contribution and/or indemnification for the defense and settlement payments it made on behalf of the Express Defendants and against Defendants NIIC, Aspen, and/or Travelers;

c. All parties are bound by the Court's declaration; and

d. Evanston seeks such other relief as is just and proper.

## **COUNT FOUR**

**EQUITABLE SUBROGATION AGAINST NIIC, ASPEN AND TRAVELERS**

139.    Evanston repeats and re-alleges paragraphs 1 through 94 as though set forth fully at length.

140.    NIIC wrongfully denied a defense and indemnity to the Express Defendants for the claims asserted against them in the Underlying Action.

141.    Aspen wrongfully denied a defense and indemnity to the Express Defendants for the claims asserted against them in the Underlying Action.

142.    Travelers wrongfully denied a defense and indemnity to the Express Defendants for the claims asserted against them in the Underlying Action.

143.    Because the Evanston CGL Primary Policy and the Excess Policy that follows form does not afford coverage for the Underlying Action, the insurer Defendants, NIIC, Aspen and/or Travelers alone had the sole and primary duty to defend and indemnify the Express Defendants.

144.    By paying the defense costs for Express Defendants and paying for the settlement of the Underlying Action on the behalf of Express Defendants, as their insurers, and after continuous refusal by the insurer defendants to pay their full obligations owed to Express

Defendants, Plaintiff is subrogated to the Express Defendants' right to collect from the insurer defendants the amounts owed under their policies to Express Defendants for the Underlying Action.

145.    Evanston is therefore entitled to reimbursement from the insurer Defendants, NIIC, Aspen and/or Travelers for the payments Evanston made for the defense and in settlement of the Underlying Action on behalf of the Express Defendants.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a. Coverage is owed under the policies of insurance issued by Defendants Aspen, NIIC, and/or Travelers;

b. Evanston is entitled to an award for equitable subrogation and reimbursement from Defendants NIIC, Aspen, and/or Travelers for the defense and settlement payments it made on behalf of the Express Defendants;

c. All parties are bound by the Court's declaration; and

d. Evanston seeks such other relief as is just and proper.

## <u>COUNT FIVE</u>

### UNJUST ENRICHMENT AGAINST NIIC, ASPEN AND TRAVELERS

146.    Evanston repeats and re-alleges paragraphs 1 through 94 as though set forth fully at length.

147.    Evanston requested that NIIC and Travelers serve as the primary insurer for the Express Defendants on multiple occasions.

148.    Evanston demanded that NIIC, Travelers and Aspen pay their share of the defense and indemnity in the form of a settlement payment on behalf of their mutual insured on multiple occasions.

149.    NIIC, Travelers and Aspen wrongfully denied a defense and indemnity to the Express Defendants for the claims asserted against them in the Underlying Action.

150.    As a result, NIIC, Travelers and Aspen each benefitted from Evanston's agreement to provide a defense to the Express Defendants and contribute toward the settlement.

151.    As a result, NIIC, Travelers, and Aspen have been unjustly enriched because they each were responsible to provide the primary and/or excess coverage to the Express Defendants and are responsible for reimbursing Evanston the costs incurred by it on the defense and in settling the Underlying Action.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a.    Coverage is owed under the policies of insurance issued by Defendants Aspen, NIIC, and/or Travelers;

b.    Evanston is entitled to reimbursement from Defendants NIIC, Aspen, and/or Travelers bases on unjust enrichment for the defense and settlement payments it made on behalf of the Express Defendants;

c.    All parties are bound by the Court's declaration; and

d.    Evanston seeks such other relief as is just and proper.

## COUNT SIX

**REQUEST FOR DECLARATORY RELIEF THAT ANY POTENTIAL COVERAGE UNDER THE EVANSTON POLICIES IS EXCESS OVER OTHER INSURANCE**

152.    Evanston repeats and re-alleges paragraphs 1 through 94 as though set forth fully at length.

153.    The Evanston Primary CGL Policy states in its "Other Insurance" provision that it is excess over any insurance "If the loss arises out of the maintenance or use of aircraft, 'autos' or watercraft to the extent not subject to" the Auto Exclusion. See Exhibit C, CG 00 01 04 13.

154.    As a result, to the extent any coverage is owed under the Evanston Primary CGL Policy (which it is not), said coverage is excess to all auto coverage owed to the Express Defendants under any other policy of insurance.

155.    The Evanston Excess Policy states that it is "excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except if the other insurance is written specifically to be excess over this insurance or if the Primary And Noncontributory Excess Insurance provision below applies."

156.    As such, to the extent any coverage is owed under the Evanston Excess Policy (which it is not), said coverage is excess to all other coverage owed to the Express Defendants under any other policy of insurance unless specifically written as excess to this policy.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a.    Any coverage obligation owed by Evanston to Express Defendants is excess to other insurance applicable to the Underlying Action;

b.    The policies issued by NIIC, Aspen, and Travelers are primary to the Evanston Policies issued to the Express Defendants for the Underlying Action, and;

c.    All parties are bound by the Court's declaration; and

d.    Evanston is entitled to all other costs the Court deems just.

## COUNT SEVEN

### REQUEST FOR DECLARATORY RELIEF THAT THE EVANSTON POLICIES DO NOT PROVIDE COVERAGE FOR PUNITIVE DAMAGES

157.    Evanston repeats and re-alleges paragraphs 1 through 94 as though set forth fully at length.

158.    The Underlying Action expressly demands judgment for compensatory and punitive damages. See Exhibit A.

159.    The Evanston Primary CGL Policy expressly excludes coverage for "Punitive damages, exemplary damages, multiplied damages, fines or penalties." See Exhibit C, MEEI 2700 05 13.

160.    Similarly, the Evanston Excess Policy expressly excludes coverage for "any costs, including defense costs, interest, fines or penalties attributable to punitive or exemplary damages." See Exhibit E, MAUB 1692 01 15.

161.    Under New Jersey law it is against public policy to insure against punitive damages.

162.    As a result, Evanston is entitled to a declaration that it is not required to defend or indemnify the Express Defendants for any award of punitive damages awarded in the Underlying Action under the Evanston Policies.

**WHEREFORE**, Plaintiff Evanston Insurance Company seeks a judgment declaring that:

a.    Evanston has no duty to defend or indemnify Express Container Keasbey against any award of punitive, treble or alike damages in the Underlying Action under the Evanston Policies;

b.    Evanston has no duty defend or indemnify Express Container against any award of punitive, treble or alike damages in the Underlying Action under the Evanston Policies

c.    All parties are bound by the Court's declaration; and

d.    Evanston is entitled to all other costs the Court deems just.

Dated:  New York, New York
       February 4, 2025

**WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP**

*Denise Marra DePekary*

Denise Marra DePekary (Attorney ID: 2751998)
Attorneys for Plaintiff
Evanston Insurance Company
1500 Broadway, Suite 2401
New York, NY 10036
P: 929-342-6000
ddepekary@wglaw.com